```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -:
RAUL MORALES,                         : 07 Civ. 10393 (RMB) (JCF)
                                      : 02 Cr.  335-01 (RMB)
            Petitioner,               :
                                      :    REPORT AND
    - against -                       : RECOMMENDATION
                                      :
UNITED STATES OF AMERICA,             :
                                      :
            Respondent.               :
- - - - - - - - - - - - - - - - - - -:
```
TO THE HONORABLE RICHARD M. BERMAN, U.S.D.J.:

  Raul Morales, proceeding pro se, brings this motion pursuant to 28 U.S.C. § 2255, challenging his sentence for conspiracy to distribute cocaine and cocaine base.  He claims that he was denied effective assistance of counsel because his attorney failed to contest an enhancement for possession of a firearm and to argue that he qualified for "safety valve" relief.  The petitioner further contends that the court failed to make specific factual findings as to whether he possessed a firearm in connection with the narcotics offense.  For the reasons set forth below, I recommend that the motion be denied.

Background

  Raul Morales was a "key participant in the continuing distribution of narcotics" in and around 2025 Seward Avenue in the Bronx between January 2001 to March 2002.  (Presentence Investigation Report ("PSI Report"), attached as Exh. A to Letter of Natalie Lamarque dated Feb. 15, 2008 ("Lamarque Letter"), at 5).  On February 28, 2002 and March 7, 2002, he sold 25 grams of cocaine

base to an undercover officer, and on March 14, 2002, he sold 50 grams of powder cocaine to an officer. (PSI Report at 5-8; Pl. Tr. at 16-19).[1] In addition, he was arrested for illegally possessing a 9-millimeter handgun as he attempted to enter his residence on January 18, 2002. (PSI Report at 8; Plea Agreement at 10, 19-20).

    A.    <u>Indictment</u>

The indictment charged Mr. Morales with one count of conspiracy to distribute or to possess with intent to distribute 50 grams or more of a controlled substance in violation of 21 U.S.C. § 846; one count each of distribution of 50 grams or more of cocaine and cocaine base in violation of 21 U.S.C. §§ 812, 841(a)(1), and 841(b)(1)(A); one count of possession of a firearm after having previously been convicted of a felony in violation of 18 U.S.C. § 922(g)(1); and one count of carrying a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A). (Indictment, attached as Exh. B to Lamarque letter, at 1-5).

    B.    <u>Plea</u>

Mr. Morales executed a written plea agreement with the Government on August 15, 2002. (Letter of Charles A. Simon dated Aug. 7, 2002 ("Plea Agreement"), attached as Exh. D to Lamarque Letter; Pl. Tr. at 13). In exchange, the Government agreed to

---

[1] "Pr. Tr." refers to the transcript of the petitioner's plea allocution on August 15, 2002, attached as Exhibit E to the Lamarque letter.

2

dismiss the charge for carrying a firearm during and in relation to a drug trafficking crime. (Plea Agreement at 2). Also, Mr. Morales received a two-level reduction in the offense level for accepting responsibility for his crime on the basis of his plea and his pre-sentence conduct, and a one-level reduction for giving timely notice of his intent to enter a guilty plea. (Plea Agreement at 3).

The parties stipulated the following facts for the purpose of calculating Mr. Morales' sentencing guidelines range: (1) that "the base offense level is 32, because the defendant sold at least 50 grams, but less than 150 grams, of cocaine base," and (2) that "the base offense level is increased by 2 levels, because the defendant possessed a firearm." (Plea Agreement at 3). This resulted in an "applicable sentencing guidelines range [of] 108 to 135 months." (Plea Agreement at 4). However, because the first two narcotics counts each carried a statutory mandatory minimum sentence of 120 months pursuant to 21 U.S.C. § 841(b)(1)(A), the petitioner's stipulated sentencing range was 120 to 135 months. (Plea Agreement at 4). The plea agreement also stated that Mr. Morales would "neither appeal, nor otherwise litigate under Title 28, United States Code, Section 2255 and/or section 2241, any sentence within or below the Stipulated Sentencing Guidelines Range" of 120 to 135 months. (Plea Agreement at 5).

On August 15, 2002, Mr. Morales pled guilty before then-Chief

Judge Michael B. Mukasey to all counts of the indictment except for the count charging him with carrying a firearm in connection with a drug trafficking crime, which the Government had agreed to dismiss. (Pl. Tr. at 2). During the plea allocution, Judge Mukasey determined that Mr. Morales was competent to plead and that he understood the rights he would be waiving by entering a plea of guilty. (Tr. at 4-7). In particular, Judge Mukasey reviewed with Mr. Morales the waiver of his trial rights and of his right to appeal or otherwise challenge a sentence within the stipulated range. (Pl. Tr. at 5-7, 15). Judge Mukasey also reviewed with Mr. Morales each count of the offense, including count four, where the petitioner admitted to illegally possessing a handgun on January 18, 2002. (Pl. Tr. at 7-10, 19). Judge Mukasey concluded that Mr. Morales' plea, including the waiver of his appeal rights, was knowing and voluntary, and that each essential element of the offense had a factual basis. (Pl. Tr. at 16-20).

    C.   <u>Sentencing</u>

On July 3, 2003, Chief Judge Mukasey sentenced Mr. Morales to a term of 120 months incarceration, at the bottom of the range stipulated to by the parties. (S. Tr. at 5).[2] At the hearing, Judge Mukasey amended paragraph 56 of the PSI Report, which dealt with the petitioner's arrest on January 18, 2002, striking the

---

[2] "S. Tr." refers to the transcript of the petitioner's sentencing hearing on December 20, 2002, attached as Exhibit G to the Lemarque Letter.

contention that "[Mr. Morales] attempted to use [a loaded firearm] against the detectives," leaving only the representation that "[Mr. Morales] refused to be handcuffed."  (S. Tr. at 2-3).  After this change was made, Mr. Morales confirmed that he had reviewed the PSI Report with his attorney and did not have any objections to its content.  (S. Tr. at 2-3).

    D.    Direct Appeal

On October 27, 2003, Mr. Morales, proceeding pro se, filed an appeal with the United States Court of Appeals for the Second Circuit.  He argued that (1) the district court failed to determine that he fully understood the conspiracy charge that he pled guilty to as required by Rule 11(c) of the Federal Rules of Criminal Procedure; (2) Judge Mukasey erred by sentencing him for crimes not adequately supported by a factual basis, also in violation of Rule 11; (3) his trial counsel was ineffective; and (4) Judge Mukasey should not have considered his prior conviction in sentencing him for possession of a firearm in violation of 18 U.S.C. § 922(g)(1). (Appellant Pro Se Brief, attached as Exh. H to Lamarque Letter, at 4, 8-16).  On July 6, 2004, the Second Circuit affirmed the district court's judgment and rejected each of Mr. Morales' arguments with prejudice except for the ineffective assistance of counsel claim, which it dismissed without prejudice to the filing of a petition for writ of habeas corpus under 28 U.S.C. § 2255. United States v. Morales, 105 Fed. Appx. 308 (2d Cir. 2004).

    D.    <u>Crosby Remand</u>

On May 6, 2005, the Second Circuit remanded the case to the district court for further proceedings pursuant to <u>United States v. Crosby</u>, 397 F.3d 103 (2d Cir. 2005). <u>United States v. Morales</u>, No. 03-1347 (2d Cir. April 28, 2005) (ruling that its previous order dismissing the petitioner's direct appeal was otherwise fully effective). On remand, it was reassigned to the Honorable Richard M. Berman, U.S.D.J. After a hearing, Judge Berman concluded that the original sentence imposed by Judge Mukasey was in accordance with the factors set forth at 18 U.S.C. § 3553(a) and denied the petitioner's request for resentencing. (Crosby Tr. at 11-12).[3]

On November 7, 2007, Mr. Morales filed the instant motion to vacate his sentence. (Habeas Corpus Motion Under 28 U.S.C. § 2255 ("Section 2255 Motion")).

<u>Discussion</u>

    A.    <u>Section 2255</u>

28 U.S.C. § 2255 provides that a prisoner in federal custody may petition the sentencing court to "vacate, set aside or correct the sentence" upon a showing that "the sentence was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a). Upon receipt of a Section 2255 petition, the court must "cause [] notice to be served" on the respondent and

---

[3] "Crosby Tr." refers to the transcript of the petitioner's hearing on remand held on August 21, 2007, attached as Exhibit L to the Lamarque Letter.

hold a hearing to "make findings of fact and conclusions of law" unless "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); see also Machibroda v. United States, 368 U.S. 487, 494 & n.3 (1962). However, the nature of that hearing remains within the discretion of the district court, and, indeed, the statute contemplates that "there are times when allegations of facts outside the record can be fully investigated without requiring the [] presence of the prisoner." Chang v. United States, 250 F.3d 79, 85 (2d Cir. 2001) (quoting Machibroda, 368 U.S. at 495); 28 U.S.C. § 2255(c). Other methods of investigation available to the court include "letters, documentary evidence, and, in an appropriate case, [] affidavits." Chang, 250 F.3d at 86 (quoting Raines v. United States, 423 F.2d 526, 529-30 (4th Cir. 1970)); accord Riggi v. United States, No. 04 Civ. 7852, 2007 WL 1933934, at *7 (S.D.N.Y. July 5, 2007).

    B.   Ineffective Assistance of Counsel

The petitioner contends that his counsel was ineffective for (1) advising him to enter into a plea agreement that contained "a two level enhancement for a firearm that was not connected to the drug offense for which [he] was convicted" and for (2) "not seeking a safety valve." (Section 2255 Motion at 5-6).

To prevail on a claim of ineffective assistance of counsel, a petitioner must generally demonstrate that (1) defense counsel's

performance was deficient, and (2) resulted in prejudice to the petitioner. Strickland v. Washington, 466 U.S. 668, 687 (1984); accord Lockhart v. Fretwell, 506 U.S. 364, 369 (1993); see also United States v. Couto, 311 F.3d 179, 187 (2d Cir. 2002) (applying Strickland standard to evaluate ineffective assistance claim arising out of guilty plea). A reviewing court assessing whether counsel's performance was deficient must determine whether his conduct "fell below an objective standard of reasonableness," given the facts and circumstances of the particular case. Strickland, 466 U.S. at 688. The court should be "highly deferential" and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. The "prejudice" prong of the Strickland test requires a "showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable," id. at 687, and that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

    1.   Failure to Contest Firearm Enhancement

The petitioner's first claim of ineffective assistance fails because his counsel, Richard Jasper, acted reasonably in not objecting to the firearm enhancement in the plea agreement. Mr. Morales admitted to illegally possessing a 9-millimeter semiautomatic pistol when he was arrested on January 18, 2002. (Pl. Tr. at 19). Sentencing Guideline § 2D1.1(b)(1) provides that

the offense level for a narcotics conspiracy be increased by two levels "[i]f a dangerous weapon (including a firearm) was possessed." The guidelines also state that "[t]he adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." U.S. Sentencing Guidelines Manual § 2D1.1 cmt. n.3.

While the petitioner contends that the firearm was not connected to the narcotics offense here, the Second Circuit has consistently held that the firearm enhancement should be applied if the defendant's weapon was kept in the same location as narcotics during the course of a drug conspiracy. See, e.g., United States v. Smith, 215 F.3d 237, 240 (2d Cir. 2000) (guns found in same room as cocaine base and paraphernalia used to cut and weigh cocaine); United States v. Sweet, 25 F.3d 160, 162-63 (2d Cir. 1994) (guns found in trailer where cocaine was stored and cut); United States v. Wilson, 11 F.3d 346, 355 (2d Cir. 1993) (gun found in apartment where narcotics and proceeds from the sale of narcotics were stored). The Circuit has also stated that the presence of a weapon where narcotics was stored and where defendant arranged narcotics deals "cannot be said to be unrelated to the ongoing narcotics trade." United States v. Schaper, 903 F.2d 891, 896 (2d Cir. 1990).

In this case, Mr. Morales was found in possession of a loaded firearm while entering the location where he stored and processed

narcotics. (PSI Report at 12). In addition to bags of cocaine and cocaine base, police found 9-millimeter bullets in the petitioner's apartment. (PSI Report at 7). Therefore, contesting the two-level weapons enhancement would have been fruitless, and Mr. Jasper's decision not to pursue the matter "[fell] within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689.

Even if the petitioner could demonstrate that Mr. Jasper's performance was objectively unreasonable, the petitioner was not prejudiced by the weapons enhancement because he was sentenced to the statutory minimum of 120 months imprisonment pursuant to 21 U.S.C. § 841(b)(1)(A). The petitioner could, of course, have been prejudiced notwithstanding his having received the minimum sentence if he had been entitled to a reduced sentence pursuant to the "safety valve" provision in the narcotics laws. However, for the reasons discussed below, his contention that he was safety valve eligible is similarly meritless.

### 2. Failure to Seek Safety Valve Treatment

The law authorizes courts to impose a sentence "pursuant to guidelines promulgated by the United States Sentencing Commission under section 994 of title 28 without regard to any statutory minimum sentence" if a defendant meets certain requirements. 18 U.S.C. § 3553(f). Chief among these requirements are that "the defendant [] not use violence or credible threats of violence or

possess a firearm or other dangerous weapon . . . in connection with the offense . . . ." 18 U.S.C. § 3553(f)(2). As discussed above, Mr. Morales was found to have possessed a gun in connection with his narcotics offense and was therefore disqualified from safety valve treatment. Accordingly, Mr. Jasper cannot be said to have acted unreasonably in forgoing an argument for sentencing under the safety valve.

Because the petitioner cannot satisfy the performance prong of the Strickland test in connection with his safety valve claim, I need not determine whether any prejudice resulted. See Strickland, 466 U.S. at 697. ("[T]here is no need for a court deciding an ineffective assistance claim to . . . address both components of the inquiry if the defendant makes an insufficient showing on one.").

    C.   Firearm Enhancement Findings

The petitioner next argues that the Court failed to make specific factual findings as to the applicability of the firearm enhancement. (Section 2255 Motion at 9). The petitioner's claim fails because it is both barred by the waiver provision in his plea agreement and procedurally defaulted since he failed to raise it on direct appeal.

As part of Mr. Morales' plea agreement, he expressly waived his right to litigate any sentence below 135 months. (Plea Agreement at 5). Waivers of appeal and collateral review rights in plea

11

agreements are generally enforceable. See United States v. Monzon, 359 F.3d 110, 116-17 (2d Cir. 2004) (reasoning that defendants should not be permitted "to escape the fairly bargained-for consequences of [their] agreement with the government [and] render the plea bargaining process and the resulting agreement meaningless" (quoting United States v. Salcido-Contreras, 990 F.2d 51, 53 (2d Cir. 1993)); Garcia-Santos v. United States, 273 F.3d 506, 508-09 (2d Cir. 2001) (per curiam). Courts will only set aside such a waiver where (1) the waiver was not knowing, voluntary, or competent; (2) the sentence was based on a constitutionally impermissible factor, such as race; (3) the government breached the plea agreement; or (4) the sentencing court failed to articulate any rationale for the sentence imposed. United States v. Gomez-Perez, 215 F.3d 315, 319 (2d Cir. 2000); accord Contreras v. United States, No. 06 Civ. 790, 2007 WL 1280638, at *3 (S.D.N.Y. April 30, 2007). The petitioner has not identified any such ground for abrogating his waiver. During the plea allocution, Chief Judge Mukasey specifically reviewed Mr. Morales' waiver of appeal rights with him. (Pl. Tr. at 15). The petitioner also confirmed that he read and reviewed the plea agreement with Mr. Jasper and fully understood it. (Pl. Tr. at 13).

The petitioner is also procedurally barred from raising a firearm enhancement claim in a Section 2255 petition because he failed to raise it on direct appeal. See Massaro v. United States,

538 U.S. 500, 504 (2003) ("[t]he general rule [is] that claims not raised on direct appeal may not be raised on collateral review . . . ."). Mr. Morales contends that he raised this claim on direct appeal "[i]n the form of ineffective assistance of counsel." (Section 2255 Motion at 8). However, while the petitioner argued in his pro se brief to the Second Circuit that his trial attorney had been ineffective in several respects, he never suggested that his counsel should have pressed the sentencing judge to make more explicit findings in connection with the firearm enhancement.

Accordingly, this Court may consider the petitioner's claim on the merits only if he can demonstrate cause for the default and actual prejudice resulting from the alleged error, id. at 622 (citing Murray v. Carrier, 477 U.S. 478, 488 (1986)); Coleman v. Thompson, 501 U.S. 722, 750 (1991); Wainwright v. Sykes, 433 U.S. 72 (1977), or a "fundamental miscarriage of justice." Coleman, 501 U.S. at 750. Mr. Morales has not claimed any cause for his failure to assert the claim on appeal. Nor can he show actual prejudice resulting from any error related to the firearm enhancement since he was sentenced to the statutory minimum term of imprisonment. Finally, he cannot claim a miscarriage of justice based on actual innocence since he acknowledged his guilt when he entered his plea. The petitioner therefore cannot overcome the procedural bar to review of this claim.

Conclusion

For the reasons set forth above, I recommend that Mr. Morales' motion to vacate his sentence be denied. Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from this date to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Richard M. Berman, Room 650, and to the chambers of the undersigned, Room 1960, 500 Pearl Street, New York, New York 10007. Failure to file timely objections will preclude appellate review.

Respectfully submitted,

*James C. Francis IV*
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated:   New York, New York
         July 18, 2008

Copies mailed this date:

Raul Morales
53456-054
FCI Allenwood Med.
P.O. Box 1000
White Deer, PA 17887

14

Natalie Lamarque, Esq.
Assistant United States Attorney
One Saint Andrew's Plaza
New York, New York 10007